# Southern Express Company *v*. Mayor and Aldermen of Tuscaloosa.

## *Action of Debt to Recover City License Tax.*

[Decided February 5, 1902.]

1. *Municipal license tax on express companies, constitutionality of under Constitution, Art. IV, § 50.*—An express company which has paid the State license tax required by act of February 18, 1893, (Acts, 1892-93, p. 694), as codified in Code, § 3914, is not liable for the payment of a municipal license tax, imposed by ordinance upon express companies in accordance with the provisions of a later act of the General Assembly, conferring upon the municipality power to impose license taxes upon such companies, said later act being violative of Constitution of 1875, Art. IV, § 50, providing that "The General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this State.—(SHARPE, J., *dissenting.*)

2. *Same; case at bar; constitutionality of Act of February 18th, 1895, (Acts, 1894-95, p. 1079.), regarding municipal license taxes against express company in city of Tuscaloosa.*—That portion of the act of February 18th, 1895, (Acts, 1894-95, p. 1079), conferring upon the city of Tuscaloosa power and authority to license and regulate express companies, and ordinances passed thereunder, being inconsistent with the provisions of act of February 18th, 1893, (Acts, 1892-93, p. 694), providing that "No express company which has paid the privilege tax hereby required shall be liable to pay any additional privilege tax in this State," are violative of Constitution, 1875, Art. IV, § 50. (SHARPE, J., *dissenting.*)

3. *Repeal of statutes; when local law not repealed by general one.* A provision in an act amending a city charter, giving authority to impose privilege taxes, being a local act, is not repealed by the subsequent codification of a general statute.

4. *Municipal license tax, action of debt to recover.*—Action of debt lies to recover a municipal license tax.

APPEAL from Tuscaloosa Law & Equity Court.
Tried before Hon. J. J. MAYFIELD.

Action of debt by the mayor and aldermen of Tuscaloosa, a municipal corporation, for the recovery of certain sums claimed as privilege tax imposed by ordinance of the city From a judgment for plaintiff the defendant appeals.

F. G. DuBIGNON and FOSTER & OLIVER, for appellant, cited Acts 1892-93, p. 693; Code, § 3914; Constitution 1875, Art. IV, § 50; *Douglass v. Anniston*, 104 Ala. 291; *Holt v. Mayor, etc.*, 111 Ala. 373; Southerland on Stat. Const., §§ 118, 121, 127.

A. A. WILEY, for appellant, cited *Hewlett v. Camp*, 115 Ala. 499; *City Council v. National, etc., Asso.*, 108 Ala. 342.

VANDEGRAFF & VERNER, for appellee, cited *Van Hook v. City of Selma*, 70 Ala. 361; *Ex parte Marshall*, 64 Ala. 266; *Holt v. Birmingham*, 111 Ala. 369; *Douglass v. Anniston*, 104 Ala. 291; *Ex parte Cowert*, 92 Ala. 94; *State v. Fleming*, 112 Ala. 181.

SHARPE, J.—The act of February 18, 1893 (Acts 1892-3, p. 694) required of express companies for doing business in the State a privilege tax and provided that "no express company which has paid the privilege tax hereby required shall be liable to pay any additional privilege tax or other tax in this State except upon its real estate, fixtures and other local property in the State." The provisions of this act except as to the officer who receives the tax were adopted into the Code as section 3914.

On February 18th, 1895, an act of the legislature was passed amending the act under which the city of Tuscaloosa was incorporated, and purporting on its face to authorize that city to levy and collect annually a tax on and to regulate and license certain enumerated "persons, businesses, vocations and privileges," among which are "express companies engaged in the business of carrying express matter from Tuscaloosa to other points in

Alabama and from other points in Alabama to Tuscaloosa." This act contained a clause purporting to repeal "all laws general or special" so far as they were in conflict with its provisions. See Acts 1894-5, p. 1079.

For each of the years 1895, 1896, 1897, 1898 and 1899 the city adopted ordinances levying a tax on express companies doing business there. Defendant company did an expressing business in Tuscaloosa and as such paid its taxes to the State as required by law but paid none to the city for the years mentioned.

It is contended for the appellant, 1st, that in view of the statute first referred to, the act of February 18th, 1895, is violative of section 50 of article IV o fthe constitution which prescribes that "The General Assembly shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this State." The term *general laws* used in this clause of the constitution is one which has been employed to designate different classes of laws. Examples of its various signification are given in Bouvier's Law Dictionary (Rawle's Revision) where it is shown that its use is common with reference to the subject matter of statutes as well as to the extent of territory over which statutes are intended to operate. There it is shown to be in use as the antithesis of private, also of local, and also of special statutes; and it is said that "in deciding whether or not a given law is general, the purpose of the act and the objects on which it operates must be looked to." Legal writings abound with instances where enactments of the general law-making department are mentioned as general laws by way of distinguishing them from municipal laws. For examples of such use apropos of the same subject to which this clause of the constitution relates, find in Cooley's Constitutional Limitations, page 239, the following: "Municipal by-laws must also be in harmony with the general laws of the State, and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-law must give way. The charter, however, may expressly or by necessary implication exclude the general laws of the State on any particular subject and allow the corporation to pass local laws at discretion,

which may differ from the rule in force elsewhere." In
Dillon's Municipal Corporations (4th ed.), section 329,
it is said: "The rule that a municipal corporation can
pass no ordinance which conflicts with its charter or
any general statute in force and applicable to the cor-
poration has been before stated. Not only so but it
cannot in virtue of its incidental power to pass by-laws,
or under any general grant of that authority, adopt by-
laws which infringe the spirit or are repugnant to the
policy of the State as declared in its general legisla-
tion."

It is plain that in these excerpts, to which others might
be added at cost of brevity, general laws are mentioned
as synonymous with laws other than those of the munici-
pality. That a like meaning and use must be assigned
to the terms as used in section 50, article IV of the con-
stitution is alone inferable when the purpose of that
provision is considered. The object of its framers ap-
pears to have been the placing of express prohibition
upon the delegation of legislative power which might
enable municipal boards to supersede or forestall the
operation of laws which the legislature intends shall
operate in the locality without regard to the territory
over which such laws extend. The prohibition conserves
the supremacy of the legislative will, over that of mu-
nicipal boards to the end that whenever and wherever
the legislative commands, the municipal board may not
speak contrarily. In defining the limit not to be crossed
by the legislature in conferring discretion, two classes
of laws were the subject matters involved and the con-
cise term general laws was used by way of distinguish-
ment.

As auxiliaries to the State government, municipali-
ties have from time immemorial been accustomed to have
and to exercise legislative authority in matters prop-
erly pertaining to local government. The regulation of
such matters may be shared in by, or left wholly to the
discretion of local law-makers because they are presumed
to have knowledge of local needs. The bestowal of such

[Southern Express Company v. Mayor and Aldermen of Tuscaloosa.]

authority is not a delegation of the discretion which the constitution either impliedly or expressly restricts to the general assembly, and, therefore, that body may grant or withhold the authority. The power to impose privilege taxes within reasonable limits, is among those usual and necessary to be conferred both for defraying expenses of the local government and as a means of regulating the conduct of buisness, and is classed as a police power, even though it be not for protection against harmful occupations.—*Van Hook v. City of Selma*, 72 Ala. 361; *Ex parte City of Montgomery in re Knox*, 64 Ala. 462; Tiedeman's Lim. Pol. Pow., § 101.

With reference to the constitutional provision in question this court in *Ex parte Cowert*, 92 Ala. 94, said as the stated result of exhaustive investigation and consideration: "We do not think the purpose or effect of that provision is in any manner to limit the legislature in conferring police powers on municipal corporations."

The act of 1895 merely granted a taxing power which had been withheld by the act of 1893. Its effect was to repeal the earlier act as to the city of Tuscaloosa. The general assembly has unlimited control over its own acts and can alter or repeal them at pleasure. It cannot be that before proceeding to effect the change respecting Tuscaloosa, that the legislature must first have repealed the earlier act. It properly and according to the usual direct method, conferred the power and repealed the earlier act as to that city by a single act. Thereafter the ordinance which imposed the tax did not conflict with the general law for that law as changed had authorized the tax. The case of *Holt v. Mayor and Aldermen*, 111 Ala. 369, was correctly decided but we are of the opinion that the territorial scope of the act there involved was an unnecessary test of its validity.

The authorizing act being a local one, passed for the benefit of the city specially, was not repealed by subsequent codification of the general statute.—Code, § 10; Dillon Mun. Corp., § 87.

The action of debt lies for recovery of the tax.—*Annston v. So. Railway Co.*, 112 Ala. 557; *State v. Fleming*, *Ib.* 179.

[Tatum *et al.* v. Hollis.]

The foregoing so far as it relates to the validity of the charter amendment and the taxing ordinance in question is to be taken only as an opinion of the writer leading him to believe the judgment appealed from should be affirmed. A majority of the court are of the opinion that the cases of *Howlett v. Camp*, 115 Ala. 499, and *Holt v. Mayor and Aldermen of Birmingham*, 111 Ala. 369, are decisive to the point that the said act of February 18, 1895, in so far as it purports to grant authority to the municipality of Tuscaloosa to require a license tax of express companies, is violative of the constitutional provision referred to, and that the city ordinance, so far as it attempts to impose such tax is invalid. Accordingly the judgment will be reversed and one will be here rendered that the defendant go hence without day and recover of the plaintiff the costs in this behalf expended in this and in the circuit court.

Reversed and rendered.

Sharpe, J., dissenting.