The plaintiffs, Royce Lader and Sherry Lader, appeal from a summary judgment granted in favor of the defendants, The Colonial Companies, Lowder Realty Better Homes and Gardens, Inc. ("Lowder Realty"), John Kilgore, and Grant Sullivan, in this action seeking damages for breach of contract and for fraud. We affirm.
The only evidence before the trial court at the time it ruled on the motion was the deposition of Royce Lader. It shows the following:
On August 28, 1983, the plaintiffs "listed" their home for sale with John Kilgore, an agent for Lowder Realty. The plaintiffs told Kilgore that if their home could be sold they would be interested in buying another one through him. Kilgore examined the plaintiffs' 1982 federal income tax return and advised the plaintiffs that their income was such that they would qualify for an FHA Alabama bond loan should they purchase another home. Kilgore was successful in finding a buyer for the plaintiffs' home, and the sale was subsequently closed on November 19, 1983. On October 23, 1983, the plaintiffs entered into a written contract with Lowder Construction Company to purchase a new home. Under the contract, which was negotiated by Kilgore, the plaintiffs' obligation to purchase was made contingent on their qualifying for a bond loan. Sometime prior to November 19, 1983, the date the sale of the plaintiffs' home was closed, the plaintiffs were notified that they did not qualify for a bond loan because their income in 1982 was too high. The plaintiffs then entered into a written contract with Lowder Construction Company to purchase a new home contingent upon their qualifying for a conventional adjustable rate mortgage loan. After they learned that they did not qualify for a bond loan, and while applying for the conventional loan, the plaintiffs asked Kilgore if they could wait and apply for a bond loan on the basis of their 1983 income. Kilgore never gave them an answer. The plaintiffs received the conventional loan and eventually moved into their new home on or about December 21, 1983. The plaintiffs had no contact with any representative of Lowder Realty between December 21, 1983, and February 20, 1984. On February 20, 1984, the plaintiffs contacted Grant Sullivan of Lowder Realty to discuss the "situation with the bond money" because they "were led to believe that things were going to be set right." Sullivan told the plaintiffs that he would check into the matter. Sullivan called the plaintiffs back two days later and said that Kilgore denied ever seeing their federal income tax return. After further discussion, during which the plaintiffs inquired as to whether Lowder Realty could somehow help them get their mortgage payments reduced (e.g., by obtaining for them a "different loan," by "buying [their conventional] loan down to the payment," or by paying them $10,000 in cash), Sullivan said that he would check into the matter further. Two days later Sullivan called the plaintiffs and told them that Lowder Realty could do nothing further and stated that there was "nothing further to discuss." The plaintiffs filed this lawsuit on October 11, 1985.
The thrust of the plaintiffs' complaint is that the defendants are liable for breach of contract and for fraud as the result of Kilgore's alleged representations concerning the plaintiffs' ability to qualify for a bond loan. The basis for the breach of contract claim is that Kilgore promised to obtain a bond loan for the plaintiffs. The basis for the fraud claim is that Kilgore misrepresented to the plaintiffs that he would get them a bond loan.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. Fountain v. Phillips,404 So.2d 614 (Ala. 1981).
In Mayfield v. Cotton States Mutual Insurance Co.,495 So.2d 548 (Ala. 1986), this Court held that all parol negotiations, understandings, and agreements between the plaintiffs and their insurance agent (who was named as a defendant in the case) were merged into the written contract *Page 1333 
of insurance issued by the company. In that case the plaintiffs sought to hold the agent liable as an insurer of their property based upon an alleged oral agreement to insure. While that case and this one are factually distinguishable, the rule applied there is equally applicable here. Royce Lader testified in his deposition that Kilgore told him on August 28, 1983, that the plaintiffs would qualify for a bond loan. Thereafter, on October 23, 1983, the plaintiffs entered into a written contract with Lowder Construction Company to purchase a new home. Under that contract, which was negotiated by Kilgore, the plaintiffs' obligation to purchase was made contingent on their qualifying for a bond loan. The contract did not specify that the plaintiffs were to receive a bond loan. In fact, it clearly indicates that the plaintiffs were very much aware that they might not qualify. Any parol negotiations, understandings, or agreements that the plaintiffs may have had with Kilgore concerning their ability to obtain a bond loan merged into the written contract between the plaintiffs and Lowder Construction Company, and that contract controls this case. Therefore, summary judgment was proper on the breach of contract claim.
Summary judgment was also proper on the fraud claim. Royce Lader testified in his deposition that Kilgore told the plaintiffs on August 28, 1983, that they would qualify for a bond loan. The plaintiffs were notified prior to November 19, 1983, that they did not qualify. The one-year statute of limitations applicable to fraud actions, §§ 6-2-39 and 6-2-3, Code 1975, was in effect at the time the plaintiffs were notified that they did not qualify for a bond loan. The plaintiffs' contention is that they did not discover the fraud until their subsequent conversations with Sullivan in February 1984. Thus, they argue that their fraud action was not barred as of January 9, 1985, when the legislature abolished § 6-2-39, the one-year statute of limitations, and transferred the one-year actions to § 6-2-38, the two-year statute, and amended § 6-2-3, the "saving clause," to recognize that fraud actions were thenceforth subject to the two-year statute.[1] They say that since their lawsuit was filed within two years of the February 1984 conversations with Sullivan, it is timely. We disagree.
Under § 6-2-3, supra, a claim for fraud is considered as having accrued at the time of "the discovery by the aggrieved party of the fact constituting the fraud." Fraud is "discovered" when it ought to or should have been discovered. Thus, the time of "discovery" is the time at which the party actually discovered the fraud, or had facts which, upon closer examination, would have led to the discovery of the fraud.Kelly v. Smith, 454 So.2d 1315 (Ala. 1984). The plaintiffs knew prior to November 19, 1983, that they did not qualify for a bond loan. There is nothing in the record tending to show that the plaintiffs should not have discovered a fraud at that time. Sullivan's subsequent conversations with the plaintiffs concerned only the possibility of Lowder Realty's helping the plaintiffs somehow to secure a reduction of their monthly mortgage payments. The statute of limitations on the fraud claim expired sometime prior to November 19, 1984. Actions barred as of January 9, 1985, by the one-year statute of limitations were not revived by the transfer of fraud actions to the two-year statute. Tyson v. Johns-Manville Sales Corp.,399 So.2d 263 (Ala. 1981). See also Watson v. Trail Pontiac,Inc., 508 So.2d 262 (Ala. 1987).
AFFIRMED.
MADDOX, ALMON, BEATTY and ADAMS, JJ., concur.
[1] See Ala. Acts 1984-85, Act No. 85-39. *Page 1334